1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

9

UNITED STATES OF AMERICA,

10          Plaintiff,                                    NO.  CR-11-2055-RHW

11          v.                                            **ORDER GRANTING**

12    HUGO VICTOR NUNEZ-                                  **DEFENDANT'S MOTION TO**
      VELASCO,                                            **DISMISS**

13

14          Defendant.

15          The Defendant is charged with being a deported alien found unlawfully in the

16    United States in violation of 8 U.S.C. § 1326. Defendant moves for dismissal of the

17    indictment based on the alleged invalidity of the underlying deportation order. The

18    Court heard argument on July 19, 2011. Present for the Government was Alison

19    Gregoire; Diane Hehir appeared on behalf of the Defendant. After considering the

20    parties' submissions and arguments, the Court will grant the Defendant's motion and

21    dismiss the Indictment.

22                              **I. BACKGROUND**

23          Although Defendant was deported in 2005, the events forming the basis of this

24    case began several years before. On June 2, 2000, Defendant received a Notice to

25    Appear before an Immigration Judge ("Notice"). He was seventeen years old at the

26    time. The Notice indicated that Defendant was to appear at the immigration court in

27    Seattle, but it did not specify the time or date. Defendant maintains that he never

28    received a supplemental Notice containing that information. The Government,

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 1**

however, produces a document mailed to Defendant's home address dated August 21, 2000, setting his hearing for October 18, 2000, at 2:30 p.m. This notice was addressed to Defendant only; no copy was separately mailed to Defendant's father, his custodial guardian at the time.

Defendant failed to appear at that hearing. After reviewing the record, the Immigration Judge proceeded in absentia and entered an Order of Removal. The Order indicates that a copy was sent to Defendant at his home address. On March 15, 2001, the I.N.S.[1] sent to Defendant-again at his home—a letter detailing the arrangements for his departure from the United States. The letter was sent via registered mail, and Defendant signed the acknowledgment of receipt. In addition to scheduling his deportation for April 12, 2001, it stated: "A review of your file indicates there is no administrative relief which may be extended to you[.]" Defendant did not appear for removal.

Defendant absconded into society until November 5, 2005, when he was found in a Sunnyside, Washington jail and finally deported. The Government again found Defendant in the United States in 2011 and the Government brought this indictment.

## II. ANALYSIS

In a criminal prosecution under § 1326, due process requires a meaningful opportunity for judicial review of the underlying deportation. United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998). Because the removal order serves as a predicate element of an illegal reentry conviction under Section 1326, a defendant charged with that offense has a Fifth Amendment right to collaterally attack the removal order. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004).

To sustain a collateral attack on an underlying removal order, a defendant must

---

[1] The I.N.S. subsequently has been subsumed within the Department of Homeland Security and renamed Immigration and Customs Enforcement (ICE). For ease of reference to the exhibits, "I.N.S." is used throughout.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 2**

1  establish that: (1) he exhausted all administrative remedies available to him to appeal

2  his removal order, (2) the underlying removal proceedings at which the order was

3  issued improperly deprived him of the opportunity for judicial review, and (3) the

4  entry of the order was fundamentally unfair. *See* 8 U.S.C. § 1326(d). If a defendant

5  succeeds in this three part test, the indictment against him must be dismissed. United

6  States v. Pallares-Galan, 359 F.3d 1088, 1091 (9th Cir. 2004).

7      Defendant contends that he is entitled to dismissal because the Order of

8  Removal—the predicate to the Section 1326 violation charged here—is fundamentally

9  flawed in two respects. First, Defendant maintains that he never received actual or

10  effective notice of his hearing. Second, he argues that the I.N.S.'s statement that no

11  administrative relief was available following the hearing in absentia was erroneous,

12  and thus that it denied him due process.

13      The Court finds both of Defendant's arguments persuasive, and it grants this

14  motion in the alternative using both theories.

15  **A.    Sufficiency of Notice**

16      Defendant asserts that the I.N.S. deprived him of both actual and effective

17  notice of his deportation hearing. Because the Court finds that the I.N.S. failed to

18  provide effective notice, it does not reach the question of whether Defendant actually

19  received the notice sent.[2]

20      **1.    Effective Notice**

21      Defendant contends that notice also should have been sent to his father because

22  Defendant was a minor at the time. This argument was first raised in his reply brief

23  ─────────────────

24  [2]The Court notes, however, that it is far from certain from the record that

25  Defendant actually received notice with a complete hearing schedule. The

26  Government produces copies of a complete notice sent to Defendant's home, but

27  Defendant maintains he never received it. More troubling, at Defendant's removal

28  hearing the Immigration Judge said that "[s]ome of the notices have come back,"

without further explanation as to whose notices were affected. (ECF No. 39, at 3).

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 3**

(after he received the supplemental notice in discovery). Defendant relies primarily on Flores-Chavez v. Ashcroft, 362 F.3d 1150 (9th Cir. 2004), which granted a petition to reopen a BIA proceeding on these grounds. The Government responds that although Defendant was a minor on the date the notice was sent, he was an adult on October 18, 2000, the date of the actual hearing.

Flores-Chavez was fifteen when the I.N.S. conducted his removal proceedings; written notice was sent to him but not his adult guardians. He did not appear and was ordered removed. The Court sought to define the specific requirement of adequate notice to alien juveniles. It started by recognizing that federal regulations require that "juveniles" defined as those under 18 years old, who are initially taken into custody by the government must be released into the custody of a guardian pending hearing on their case. 8 C.F.R. § 242.24. The Court held the plain purpose of this provision was to provide the juvenile with a resource to ensure that he would appear at the hearing. Flores-Chavez, 362 F.3d at 1156. "[J]uveniles are presumed unable to appear at immigration proceedings without the assistance of an adult." Id. at 1157.

The Court then tried to reconcile the purpose of Section 242.24 with another provision providing that service of immigration notices relating to juveniles under 14 must be made upon the custodial guardian. 8 C.F.R. § 103.5a(c)(2)(ii). The Flores-Chavez Court rejected the Government's argument that Section 103.5a clearly permits service on juveniles alone if they are older than 14. The Court found this cutoff arbitrary: "The INS's mysterious selection with regard to notice alone of the age of fourteen as the point at which a minor no longer needs an adult's help is particularly incomprehensible. Indeed, at age fourteen, a minor could not even drive himself to a hearing that he is required to attend." Flores-Chavez, 362 F.3d at 1159. In summary, the Court held that the construction of the entire regulatory scheme and due process required service of notice to the alien, and (if he is under eighteen) to his parent or guardian as well.

Here, Defendant was seventeen on August 22, 2000, when he received the

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 4**

supplemental notice of his hearing. The notice is addressed only to Defendant; there is no evidence notice was sent also to Defendant's father. The Government argues that since Defendant was nearly an adult at the time of the notice—and was an adult when the hearing occurred—that the Court should disregard the rule set forth in Flores-Chavez. Indeed, Defendant was just three weeks away from turning eighteen. The Court does not find this argument persuasive, however. As stated in Flores-Chavez: "no minor alien under eighteen should be presumed responsible for understanding his rights and responsibilities in preparing for and appearing at final immigration proceedings." Id at 1157. The Court made no analysis of any of Flores-Chavez's individual characteristics, other than that he was under eighteen.

The Notice describing Defendant's legal rights and the importance of the removal hearing was sent while he was a minor. It should make no difference that Defendant was eighteen at the actual hearing where he is presumed to be unaware of the importance of that hearing. Perhaps at seventeen years, eleven months, and eleven days old, Defendant was able to understand the implications of the notice of hearing. Maybe it is even likely that he could. But the Court does not believe it is permitted, nor is there an adequate record before it, to make case-by-case assessments of an individual's capacity for understanding their legal rights. The I.N.S.'s own regulations create a bright line rule that individuals older than eighteen have such an understanding and those younger do not. *See* id.

Alternatively, the Government argues that Defendant's father was served because he and Defendant resided at the same residence, that to which the notice was sent. The Government tries to distinguish this situation from that in Flores-Chavez where the record did not "specify precisely to whom Flores was released." Id. at 1154, n.2. This argument assumes that Defendant's father would open mail addressed to his teenaged son. In any event, the Government must prove "by clear, unequivocal, and convincing evidence that written notice was so provided" to the alien. 8 U.S.C. § 1229a(b)(5)(A). After Flores-Chavez, this notice would include that to his guardian.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 5**

1  Other than the Government's assumption that Defendant's father would read his son's
2  individually-addressed mail, it offers no additional evidence that the father received
3  notice of the hearing.

4      Because no notice was sent to his father, Defendant's underlying *in absentia*
5  removal violated due process under <u>Flores-Chavez</u>. This is sufficient cause for the
6  Court to dismiss the Indictment.

7  **B.    Erroneous Information about Available Administrative Relief**

8      In addition to attacking notice, Defendant makes a second claim for dismissal.
9  The letter scheduling Defendant's departure (sent via registered mail and received by
10 Defendant) states that Defendant is entitled to no administrative relief and must report
11 for deportation. Defendant contends this statement is erroneous because he could have
12 applied to reopen the proceedings and choose voluntary departure. He argues that this
13 amounts to a due process violation.

14     Defendant relies on <u>United States v. Arias-Ordonez</u>, a Ninth Circuit case with
15 remarkably similar facts. 597 F.3d 972 (9th Cir. 2010). An immigration judge ordered
16 <u>Arias-Ordonez</u> removed *in absentia* after he did not appear for his hearing. His initial
17 Notice of Appearance did not contain the date or time of his hearing, and he claimed
18 to never have received the complete notice sent a week later. Like Defendant,
19 <u>Arias-Ordonez</u> received a letter shortly before his scheduled departure with verbatim
20 language as Defendant's:

21      "A review of your file indicates that there is no administrative relief
        which may be extended to you, and it is now incumbent on this Service
22      to enforce your departure from the United States."

23 He was deported, but returned to the United States and charged with illegal reentry.

24     The <u>Arias-Ordonez</u> Court found the letter to be an affirmative misstatement of
25 the law and a due process violation. 597 F.3d at 978. "The statement that there were
26 no administrative remedies available was not a true statement, because an alien
27 ordered removed *in absentia* has a statutory right to seek to reopen his case and
28 petition for relief." <u>Id.</u> at 975 (citing to 8 U.S.C. § 1229a(b)(5)(C)(ii)). The Court

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 6**

1  found that this statement affected the Arias-Ordonez's due process rights because he

2  lacked sophistication and could not know "how to pursue administrative or judicial

3  remedies." Here, it is difficult to believe that Defendant would do anything but take

4  the I.N.S. at its word when it declared no relief was possible.

5        The Government argues that Arias-Ordonez is inapplicable because both parties

6  agreed that the defendant never received notice of his hearing. While that is true, the

7  holding was not contingent thereon. Id. at 976 ("We do not need to address" whether

8  defendant received notice of the time and place of hearing.). Rather, the court relied

9  only on the erroneous statement about the availability of administrative relief to

10 conclude that the defendant launched a successful collateral attack under 8 U.S.C. §

11 1326(d). Id. at 977 (noting that the first two statutory requirements—exhaustion and

12 deprivation of judicial review—are satisfied when the government misinforms an

13 alien about the availability of relief).

14       To support dismissal of an indictment, a due process violation must prejudice

15 Defendant. Ubaldo-Figueroa, 364 F.3d at 1048. To demonstrate prejudice, Defendant

16 needs only show that he had plausible grounds for relief. United States v.

17 Lopez-Velasquez, 568 F.3d 1139, 1145 (9th Cir. 2009). Here, as in Adrias-Ordonez,

18 Defendant could have voluntarily departed in lieu of deportation under 8 U.S.C. §

19 1229c. Defendant was not an aggravated felon and had not previously availed himself

20 of voluntary departure. He declares that he would have left voluntarily if allowed.

21 This is sufficient to show prejudice. Id. at 978.

22       The Government does not contest that Defendant was eligible for voluntary

23 departure. Instead, it argues that his petition to reopen the proceedings would fail

24 because he could not demonstrate that he lacked actual notice of his hearing.

25 Regardless of whether this is true, Defendant was told authoritatively that he could not

26 even try. He is not required to show that relief would be certain to flow from his

27 efforts, United States v. Muro-Inclan, 249 F.3d 1180, 1184 (9th Cir. 2001), rather he

28 need only demonstrate that relief is plausible. The Court finds he does that here.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 7**

Accordingly, **IT IS HEREBY ORDERED:**

1.   The Defendant's Motion to Dismiss (ECF No. 34) is **GRANTED**.

2.   The above-captioned cased is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this order, provide copies to counsel and the U.S. Marshal, and **close the file**.

**DATED** this 2nd day of September, 2011.


                              *s/Robert H. Whaley*
                           ROBERT H. WHALEY
                        United States District Judge



Q:\aCRIMINAL\2011\Nunez-Velasco\dismiss.ord.wpd

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS * 8**